JEFFREY BLUMBERG
Email: Jeffrey.blumberg@cfpb.gov
Phone: 202-435-9687
REBECCA COLEMAN
Email: rebecca.coleman@cfpb.gov
Phone: (202) 435-7541
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE HARTMANN, CA Bar # 264787 - Local Counsel
301 Howard St., Suite 1200
San Francisco, CA  94105
Email: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
Fax: (415) 844-9788

Attorneys for Plaintiff Bureau of Consumer Financial Protection

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>Plaintiff,<br><br>v.<br><br>GST Factoring, Inc.; Champion Marketing Solutions, LLC; Rick Graff; Gregory Trimarche; Scott Freda; Amanda Johanson; David Mize; Jacob Slaughter; and Daniel Ruggiero;<br><br>Defendants. | Case No. 8:20-cv-01239 -DOC<br><br>**STIPULATED FINAL JUDGMENT AND ORDER AS TO DEFENDANT JACOB SLAUGHTER [7]** |

The Bureau of Consumer Financial Protection (the Bureau), commenced this civil action on July 13, 2020 to obtain injunctive and monetary relief and civil penalties.  The

Complaint alleges violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 et seq., and its implementing rule, the Telemarketing Sales Rule, 16 C.F.R. Part 310, in connection with the sale of telemarketed debt-relief services.

The Bureau and Defendant Jacob Slaughter (Defendant) agree to entry of this Stipulated Final Judgment and Order (Order), to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

Therefore it is **ORDERED**:

## I.      FINDINGS

1.      This Court has jurisdiction over the parties and the subject matter of this action and venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) and (c), and 12 U.S.C. § 5564(f).

2.      Defendant neither admits nor denies the allegations in the Complaint, except as specifically stated herein.  Defendant admits the facts necessary to establish the Court's jurisdiction over him and the subject matter of this action.

3.      The Complaint alleges claims upon which relief may be granted.

4.      The relief provided in this Order is appropriate and available pursuant to sections 1054 and 1055 of the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5564 and 5565.

5.      In the course of telemarketing and offering debt-relief services from April, 2017 to the Effective Date, Defendant requested or received payment of fees or consideration from consumers for debt-relief services before: (1) he had renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the consumer; and (2) the consumer had made at least one payment pursuant to that agreement.

6.      Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.  Each party agrees to bear its own costs and expenses, including, without limitation, attorney's fees.

7.      Entry of this Order is in the public interest.

**II.      DEFINITIONS**

8.      The following definitions apply to this Order:

    a.  "Affected Consumer" means a consumer who entered into an Engagement Agreement with Defendant and from whom Defendant received fees.

    b.  "Assisting Others" includes, but is not limited to:

        i.  formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;

        ii.  formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

        iii.  consulting in any form whatsoever;

        iv.  providing names of, or contributing to the generation of, potential customers;

      v.  participating in or providing services related to the offering, sale, or servicing of a product, or the collection of payments for a product;

     vi.  acting or serving as an owner, officer, director, manager, principal, partner, or limited partner of any entity; and

    vii.  investing or loaning money.

c.  "Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including, but not limited to a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

d.  "Defendant" means Jacob Slaughter d/b/a Slaughter LLP, and by any other names by which he might be known.

e.  "Effective Date" means the date on which this Order is entered by the Court.

f.  "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

g.  "Engagement Agreement" means an agreement to provide a Debt-Relief Service relating to private student-loan debt provided by Defendant, the receivables from which Defendant transferred to GST Factoring, Inc.

h.  "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

i.  "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

j. "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate phone call.

## CONDUCT PROVISIONS

### III.   BAN ON DEBT-RELIEF PRODUCTS AND SERVICES

**IT IS ORDERED** that:

9.   Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from:

a. Advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service;

b. Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; and

c. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person engaged in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

Nothing in this Order shall be read as an exception to this Paragraph.

### IV.   INJUNCTION CONCERNING COLLECTING PAYMENTS FROM CONSUMERS

**IT IS FURTHER ORDERED** that:

10.   As of the Effective Date, Defendant, and his agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from causing any charges to be made to, or collecting, attempting to collect, causing collection or attempts to collect, selling, assigning, or otherwise transferring any right to collect, payment from any Affected Consumer.

## V.     PROHIBITED USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that:

11.     Defendant, and his agents, servants, employees, and attorneys, who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from, consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that Defendant obtained prior to the Effective Date in connection with the advertising, marketing, promotion, offering for sale, sale, or providing of any Debt-Relief Service. However, consumer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

### MONETARY PROVISIONS

## VI.     ORDER TO PAY REDRESS

**IT IS FURTHER ORDERED** that:

12.     A judgment for monetary relief is entered in favor of the Bureau and against Defendant, in the amount of $240,000 for the purpose of providing redress to Affected Consumers; however, full payment of this judgment will be suspended upon satisfaction of the obligations in Paragraphs 13 through 16 of this Section and Paragraphs 27 through 31 and 33 of Section IX and subject to Section VII of this Order.

13.     Within 10 days of the Effective Date, Defendant must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $5,000 in partial satisfaction of the judgment as ordered in Paragraph 12 of this Section.

14.     With regard to any redress that Defendant pays pursuant to Paragraph 13, if Defendant receives, directly or indirectly, any reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, or if Defendant secures a tax deduction or tax credit with regard to any federal, state, or local

tax, Defendant must: (a) immediately notify the Enforcement Director in writing, and (b) within 10 days of receiving the funds or monetary benefit, Defendant must transfer to the Bureau the full amount of such funds or monetary benefit (Additional Payment) to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions.  After the Bureau receives the Additional Payment, the amount of the suspended judgment referenced in Paragraph 12 will be reduced by the amount of the Additional Payment and the Additional Payment will be applied toward satisfaction of the monetary judgment entered in Paragraph 12.

15.     Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

16.     If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau shall deposit the remaining funds in the U.S. Treasury as disgorgement. Defendant will have no right to challenge the Bureau's choice of remedies under this Section, and will have no right to contest any actions that the Bureau or its representatives may take under this paragraph.

17.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

**VII.   EFFECT OF MISREPRESENTATION OR OMISSION REGARDING FINANCIAL CONDITION**

**IT IS FURTHER ORDERED** that:

18.     The suspension of the monetary judgment entered in Section VI of this Order is expressly premised on the truthfulness, accuracy, and completeness of

Defendant's financial statements and supporting documents submitted to the Bureau on or about May 22, 2020 which Defendant asserts are truthful, accurate, and complete, and which include:

      a.   Financial Statement of Defendant, including the attachments, signed on May 19, 2020 and submitted to the Bureau on or about May 22, 2020, including supplemental information submitted on June 23, 2020 and July 6, 2020; and

      b.   2017 and 2018 federal tax returns for Defendant, submitted to the Bureau on or about May 22, 2020.

19.    If upon motion by the Bureau, the Court determines that Defendant has failed to disclose any material asset or that any of his financial statements or oral testimony contain any material misrepresentation or omission, including materially misstating the value of any asset, the Court shall terminate the suspension of the monetary judgment entered in Section VI and without further adjudication, shall reinstate the judgment entered in Section VI of this Order and the full judgment of $240,000 shall be immediately due and payable, less any amounts paid to the Bureau under Section VI of this Order.

20.    If the Court terminates the suspension of the monetary judgment under this Section, the Bureau will be entitled to interest on the judgment, computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

21.    Provided, however, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, provided further, that proceedings instituted under this provision would be in addition to, and not in lieu of any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Order.

## VIII.  ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED** that:

22.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty of $1 to the Bureau.  This amount is based on Defendant's limited ability to pay as attested to in his financial statements listed in Section VII above.

23.     Within 10 days of the Effective Date, Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

24.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

25.     Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant may not:

   a.   Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b.   Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including, but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

26.     Defendant agrees that the civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and thus it is not subject to discharge under the Bankruptcy Code, 11 U.S.C. § 523(a)(7).

## IX.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

27.   In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding payments not paid from the date of default to the date of payment, and will immediately become due and payable.

28.   Defendant relinquishes all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

29.   The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a nondischargeability complaint in any bankruptcy case.

30.   The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Defendant, even in Defendant's capacity as debtor-in-possession.

31.   Under 31 U.S.C. § 7701, Defendant must furnish to the Bureau his taxpayer identification number(s), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

32.   Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendant must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.  To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that Defendant is entitled to, nor may

Defendant benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

33.     Upon written request, any consumer reporting agency must furnish consumer reports to the Bureau concerning Defendant under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)(1), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## COMPLIANCE PROVISIONS

## X.     REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that:

34.     Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including, but not limited to, the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

35.     Within 7 days of the Effective Date, Defendant must:

a.  Designate at least one telephone number and email, physical and postal address as points of contact, which the Bureau may use to communicate with Defendant;

b.   Identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email and Internet addresses;

c.   Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

d.   Identify all Defendant's telephone numbers and all email, Internet, physical and postal addresses of Defendant, including all residences; and

e.   Describe in detail Defendant's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including his title, role, responsibilities, participation, authority, control, and ownership.

36.   Defendant must report any change in the information required to be submitted under Paragraph 35 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

37.   Within 90 days of the Effective Date, and again one year after the Effective Date, Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn under penalty of perjury (Compliance Report), which, at a minimum:

a.   Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant has complied with each such paragraph and subparagraph of this Order; and

b.   Attaches a copy of each Order Acknowledgment obtained under Section XI, unless previously submitted to the Bureau.

After the one-year period, Defendant must submit to the Enforcement Director additional Compliance Reports within 14 days of receiving a written request from the Bureau.

## XI.    ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

**IT IS FURTHER ORDERED** that:

38.    Within 7 days of the Effective Date, Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

39.    Within 30 days of the Effective Date, Defendant, for any business for which he is majority owner or which he directly or indirectly controls, must deliver a copy of this Order to each of its board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

40.    For 5 years from the Effective Date, Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section X, any future board members and executive officers, before they assume their responsibilities.

41.    Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with all the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq*., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

## XII.   RECORDKEEPING

**IT IS FURTHER ORDERED** that:

42.    Defendant must create, for at least 7 years from the Effective Date, all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau. Defendant must retain these documents for at least 7 years after creation and make them available to the Bureau upon the Bureau's request.

43.    Defendant must maintain, for at least 5 years from the Effective Date or 5 years after creation, whichever is longer:

a. Financial records, including, but not limited to, individual and corporate tax returns, credit reports, any and all documentation required to complete the Bureau's individual and corporate financial disclosure forms, and accounting records showing gross and net revenues, all costs incurred in generating revenues, and the resulting net profit or loss;

b. For any Affected Consumer, records showing the person's name, email and postal address, telephone number, dates and dollar amounts of payments made, and the quantity and description of goods and services purchased; and

c. All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any response to those complaints or requests.

44.     Defendant must make the documents identified in Paragraph 43 available to the Bureau upon the Bureau's request.

**XIII.  NOTICES**

**IT IS FURTHER ORDERED** that:

45.     Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. GST Factoring, Inc., et al.*, Case No. 8:20-cv-01239" and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Bureau of Consumer Financial Protection
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington, DC 20552

### XIV.  COOPERATION WITH THE BUREAU

**IT IS FURTHER ORDERED** that:

46.     Defendant must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendant must provide such information in his or his agents' possession or control within 14 days of receiving a written request from the Bureau.

47.     Defendant must cooperate fully with the Bureau in this matter and in any investigation or litigation related to or associated with the conduct described in the Complaint, including, but not limited to, providing information, documents, and testimony. Defendant must provide truthful and complete information, evidence, and testimony. Defendant must appear, or cause employees or agents to appear, for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

### XV.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, to monitor Defendant's compliance with this Order, including the financial representations upon which the monetary judgment was partially suspended:

48.     Within 14 days of receipt of a written request from the Bureau, Defendant must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

49.     For purposes of this Section, the Bureau may communicate directly with Defendant, unless Defendant retains counsel related to these communications.

50.     Defendant must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

51.     Nothing in this Order will limit the Bureau's lawful use of compulsory process, including pursuant to 12 C.F.R. § 1080.6.

**XVI.  RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that:

52.     The Court will retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order.

**XVII.  SERVICE**

**IT IS FURTHER ORDERED** that:

53.     This Order may be served upon Defendant by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

**IT IS SO ORDERED.**

Dated: this 17th day of August, 2020.

_David O. Carter_

_____

United States District Judge