JEFFREY BLUMBERG (MD Bar)
E-mail: Jeffrey.blumberg@cfpb.gov
Phone: 202-435-9687
REBECCA COLEMAN (MD Bar)
E-mail: rebecca.coleman@cfpb.gov
Phone: 202-435-7541
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE HARTMANN, CA Bar # 264787 - Local Counsel
301 Howard St., Suite 1200
San Francisco, CA  94105
Phone: (415) 844-9787
Email: leanne.hartmann@cfpb.gov
Attorneys for Plaintiff
Bureau of Consumer Financial Protection

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, <br><br> Plaintiff, <br><br> v. <br><br> GST Factoring, Inc., et al., <br><br> Defendants. | Case No. 8-20-cv-01239-DOC-ADS <br><br> **DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND CIVIL MONEY PENALTIES AGAINST DEFENDANTS GST FACTORING, INC. AND RICK GRAFF [42]** |

Plaintiff, The Bureau of Consumer Financial Protection (Bureau), filed its Complaint for Injunctive Relief, Restitution, Civil Money Penalties, and Disgorgement (Complaint), ECF 1, pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6101 et seq., and its implementing

rule, the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310. The Bureau alleged that the Defendants engaged in abusive telemarketing practices in violation of the TSR by requesting and receiving payment of unlawful advance fees from consumers seeking debt-relief services for their private student loans.

Defendants GST Factoring, Inc. (GST) and Rick Graff signed Waivers of Service of Summons, which the Bureau duly filed, ECF 12-13, but they failed to file an answer or otherwise respond to the Complaint.  The clerk entered defaults against GST and Graff (the Defaulting Defendants) on October 1, 2020.  ECF 33.  The Bureau has filed an Application for Entry of Default Judgment and Order for Permanent Injunction, Monetary Relief, and Civil Money Penalties against the Defaulting Defendants pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rules 55-1 and 55-2. The Court, having considered the Bureau's application, supporting declarations and exhibits and other evidence filed in this matter, finds good cause to grant the relief requested.

**THEREFORE, it is HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS AND CONCLUSIONS

1.  This is an action by the Bureau pursuant to Section 6 of the Telemarketing Act, its implementing rule, the TSR, 16 C.F.R. Part 310, and Sections 1054, 1055, and 1061 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5564, 5565, 5581. The Bureau has authority to seek the relief contained herein.

2.  This Court has jurisdiction over the subject-matter of this action and has jurisdiction over Defaulting Defendants pursuant to 12 U.S.C. § 5565(a)(1), and 28 U.S.C. §§ 1331 and 1345.

3.  Venue in the Central District of California is proper under 12 U.S.C. § 5564(f).

4.  Defaulting Defendants received a copy of the Complaint in this matter and waived service of the summons.

5.  Defaulting Defendants have failed to answer or otherwise defend this action.

6.     The Clerk of Court properly entered default against Defaulting Defendants.

7.     Defaulting Defendants are not minors, incompetent persons, or current members of the military service.

8.     Defaulting Defendants were served with written notice of the Application via U.S. Mail on November 4, 2020, at least seven days before any hearing on the Application.  The written notice included the amount of the money judgment requested, comprised of restitution and civil money penalties, in the Bureau's Application.

9.     The Bureau's Complaint states a claim upon which relief may be granted.

10.     The allegations in the Complaint, except with respect to damages, are taken as true because of Defaulting Defendants' default.

11.     Judgment is entered on behalf of the Bureau and against Defaulting Defendants on Counts I and II of the Complaint.

12.     This Court is empowered to issue injunctive relief, monetary relief, and civil money penalties pursuant to 12 U.S.C. § 5565.

13.     The Bureau is entitled to an Order imposing a permanent injunction against Defaulting Defendants and requiring Defaulting Defendants to pay restitution in the amount of $11,618,552, and to each pay civil money penalties in the amount of $15,000,000.

14.     This action and the relief awarded in this Order are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

15.     Entry of this Order is in the public interest.

**Defaulting Defendants Violated the TSR By Requesting and Receiving Advance Fees For a Telemarketed Debt-Relief Service (Count I)**

16.     Defaulting Defendants, having used telemarketing to enroll consumers with private student-loan debt into debt-relief services purportedly provided by Defendants Amanda Johanson, David Mize, Jacob Slaughter, or Daniel Ruggiero, which were supposed to reduce or eliminate the consumers' debts primarily through negotiation,

charged those consumers fees on a monthly basis starting at or just after enrollment, and before their debts were reduced or eliminated.

17.     GST, as a seller under the TSR, unlawfully requested and received payment of fees for debt-relief services before the terms of at least one of the consumer's debts had been negotiated, settled, reduced, or otherwise altered pursuant to an agreement executed by the consumer; and the consumer had made at least one payment pursuant to that agreement, in violation of the TSR.  16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

18.     Graff is liable for GST's violations of the TSR because he participated directly in the violations or had the authority to control them, and he knew of the conduct or was recklessly indifferent to it.  *FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1080-81 (N.D. Cal. 2018) (citing *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997)).

**Defaulting Defendants Violated the TSR By Providing Substantial Assistance or Support to Codefendants Who Unlawfully Requested and Received Advance Fees**

19.     Defendants Johanson, Mize, and Slaughter, as sellers under the TSR, unlawfully requested and received payment of fees for debt-relief services before the terms of at least one of the consumer's debts had been negotiated, settled, reduced, or otherwise altered pursuant to an agreement executed by the consumer; and the consumer had made at least one payment pursuant to that agreement, in violation of the TSR.  16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

20.     Defaulting Defendants provided substantial assistance or support to Johanson, Mize, and Slaughter by, among other things, developing the debt-relief business as described in the Complaint, facilitating the telemarketing, and facilitating the collection and distribution of advance fees paid by consumers, and Defaulting Defendants knew or consciously avoided knowing about the violations of Johanson, Mize, and Slaughter.  Therefore, Defaulting Defendants violated the TSR, 16 C.F.R. § 310.3(b).

### Basis for Equitable and Monetary Relief

21.     The Bureau is proceeding on behalf of thousands of financially distressed individuals unlawfully charged millions of dollars for debt-relief services. *Consumer Fin. Prot. Bureau v. Siringoringo*, No. SACV1401155JVSAJWX, 2016 WL 102435, at *6 (C.D. Cal. Jan. 7, 2016).  Considering the balance of hardships and the public interest, the public interest is served by an injunction preventing Defaulting Defendants from engaging in behavior related to their previous illegal conduct.  *FTC v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999).  Defaulting Defendants were involved in an elaborate, illegal scheme that lasted more than five years, and therefore broader "fencing-in" relief provisions help to "prevent similar and related violations from occurring in the future." *World Accounts, Inc. v. FTC*, 594 F.2d 212, 215 (9th Cir. 1979).  Accordingly, the permanent injunction ordered in Sections I through III below constitutes "appropriate . . . equitable relief." 12 U.S.C. §§ 5564(a), 5565(a).

22.     Restitution "may be measured by the full amount lost by consumers. . . ." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016) (quoting *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)).

23.     The Bureau has established, through competent evidence, that Defaulting Defendants received $11,618,552, in unlawful advance fees, net of refunds, from 2,816 consumers, providing a basis for the monetary judgment amount ordered in Section IV.

24.     A penalty amount of $15,000,000 against each Defaulting Defendant is appropriate.  Defaulting Defendants acted knowingly, or at least reckless, and therefore, they could be subject to much higher penalties, but in light of the applicable mitigating factors, the lower penalty as ordered in Section V is warranted.  12 U.S.C. §§ 5565(c)(2)(B), (C), (c)(3).

### DEFINITIONS

25.     The following definitions apply to this Order:

A. "**Affected Consumer**" means a consumer who paid fees pursuant to an Engagement Agreement.

B. "**Assisting Others**" includes, but is not limited to:

    i.   formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;

    ii.  formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

    iii.  consulting in any form whatsoever;

    iv.  providing names of, or contributing to the generation of, potential customers;

    v.  participating in or providing services related to the offering, sale, or servicing of a product, or the collection of payments for a product;

    vi.  acting or serving as an owner, officer, director, manager, principal, partner, or limited partner of any entity; and

    vii.  investing or loaning money.

C. "**Consumer Financial Product or Service**" is synonymous in meaning and equal in scope to the definition of the term in Section 1002(5) of the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to:

    i.  Extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other

than solely extending commercial credit to a person who originates consumer credit transactions);

    ii. Providing financial advisory services to consumers on individual financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure;

    iii. Collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a Consumer Financial Product or Service; or

    iv. Collecting debt related to any Consumer Financial Product or Service.

D. "**Corporate Defendant**" means GST Factoring, Inc., and its successors and assigns.

E. "**Debt-Relief Service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including, but not limited to a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

F. "**Defaulting Defendants**" means the Corporate Defendant and the Individual Defendant individually, collectively, or in any combination.

G. "**Effective Date**" means the date on which this Order is entered by the Court.

H. "**Engagement Agreement**" means an agreement to provide a Debt-Relief Service relating to private student-loan debt, the receivables from

which were assigned to Corporate Defendant through a factoring agreement.

I. "**Individual Defendant**" means Rick Graff and by any other name by which he might be known.

J. "**Person**" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

K. "**Telemarketing**" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate phone call.

## I.

## PERMANENT BAN ON DEBT-RELIEF PRODUCTS AND SERVICES

**IT IS ORDERED** that:

26.    Defaulting Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service;

B. Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; or

C. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person that is engaged in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

## II.
## PERMANENT BAN ON TELEMARKETING CONSUMER FINANCIAL PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that:

27.    Defaulting Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

    A. Telemarketing any Consumer Financial Product or Service;

    B. Assisting Others in Telemarketing any Consumer Financial Product or Service; or

    C. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person that is engaged in Telemarketing any Consumer Financial Product or Service.

## III.
## PROHIBITION ON COLLECTING ACCOUNTS AND USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that:

28.    As of the Effective Date, Defaulting Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from charging fees to Affected Consumers or collecting, attempting to collect, or selling, assigning, or otherwise transferring any right to collect payment from any Affected Consumer.

29.    Defaulting Defendants, and their officers, agents, servants, employees, and attorneys, who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from, consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that Defaulting Defendants

obtained prior to the Effective Date in connection with the advertising, marketing, promotion, offering for sale, sale, or providing of any Debt-Relief Service. However, consumer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## IV.

## ORDER TO PAY REDRESS

**IT IS FURTHER ORDERED** that:

30.     A judgment for monetary relief is entered in favor of the Bureau and against Defaulting Defendants, jointly and severally, in the amount of $11,618,552, for the purpose of providing redress to Affected Consumers.

31.     Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

32.     If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, funds will not revert to Defendants. Defendants will have no right to challenge the Bureau's choice of remedies under this Section, and will have no right to contest any actions that the Bureau or its representatives may take under this paragraph.

33.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## V.

## ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED** that:

34.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and taking into account the factors in 12

U.S.C. § 5565(c)(3), a judgment awarding a civil money penalty in the amount of $15,000,000 is entered against Corporate Defendant with post-judgment interest at the legal rate. This monetary judgment is enforceable against any asset owned by, on behalf of, for the benefit of, or in trust by or for Corporate Defendant.

35.    Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and taking into account the factors in 12 U.S.C. § 5565(c)(3), a judgment awarding a civil money penalty in the amount of $15,000,000 is entered against Individual Defendant with post-judgment interest at the legal rate. This monetary judgment is enforceable against any asset owned by, on behalf of, for the benefit of, or in trust by or for Individual Defendant.

36.    The civil money penalties paid under this Order shall be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

# VI.
## ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

37.    Defaulting Defendants must relinquish all dominion, control, and title to any funds paid pursuant to this Order to the fullest extent permitted by law and no part of the funds may be returned to Defaulting Defendants.

38.    Defaulting Defendants shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including any insurance policy, with regard to any civil money penalty paid pursuant to this Order.

39.    Defaulting Defendants shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any civil money penalty that Defaulting Defendants pay pursuant to this Order.

## VII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that:

  40. The Court will retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order.

## VIII.

## SERVICE

**IT IS FURTHER ORDERED** that:

  41. This Order may be served upon Defendants by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

**SO ORDERED this** 3rd **day of** Dec____, 2020.

_David O. Carter_

_____
Honorable David O. Carter
United States District Judge