JEFFREY BLUMBERG (MD Bar)
E-mail: Jeffrey.blumberg@cfpb.gov
Phone: 202-435-9687
REBECCA COLEMAN (MD Bar)
E-mail: rebecca.coleman@cfpb.gov
Phone: 202-435-7541
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE HARTMANN, CA Bar # 264787 - Local Counsel
301 Howard St., Suite 1200
San Francisco, CA 94105
Phone: (415) 844-9787
Email: leanne.hartmann@cfpb.gov
Attorneys for Plaintiff
Bureau of Consumer Financial Protection

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GST Factoring, Inc., et al.,<br><br>　　　　　Defendants. | Case No. 8-20-cv-01239-DOC-ADS<br><br>**DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND CIVIL MONEY PENALTIES AGAINST DEFENDANT AMANDA JOHANSON  [64]** |

Plaintiff, the Bureau of Consumer Financial Protection (Bureau), filed its Complaint for Injunctive Relief, Restitution, Civil Money Penalties, and Disgorgement (Complaint), ECF 1, pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6101 et seq., and its implementing

rule, the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310. The Bureau alleged that the Defendants engaged in abusive telemarketing practices in violation of the TSR by requesting and receiving payment of unlawful advance fees from consumers seeking debt-relief services for their private student loans.

Defendant Amanda Johanson was duly served on October 14, 2020 (ECF 40), but she failed to file an answer or otherwise respond to the Complaint. The clerk entered default against Defendant Johanson (Defaulting Defendant) on November 10, 2020. ECF 47. The Bureau has filed an Application for Entry of Default Judgment and Order for Permanent Injunction, Monetary Relief, and Civil Money Penalties against Defaulting Defendant pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rules 55-1 and 55-2. The Court, having considered the Bureau's application, supporting declarations and exhibits and other evidence filed in this matter, finds good cause to grant the relief requested.

**THEREFORE, it is HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

### FINDINGS AND CONCLUSIONS

1. This is an action by the Bureau pursuant to Section 6 of the Telemarketing Act, its implementing rule, the TSR, 16 C.F.R. Part 310, and Sections 1054, 1055, and 1061 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5564, 5565, 5581. The Bureau has authority to seek the relief contained herein.

2. This Court has jurisdiction over the subject-matter of this action and has jurisdiction over Defaulting Defendant pursuant to 12 U.S.C. § 5565(a)(1), and 28 U.S.C. §§ 1331 and 1345.

3. Venue in the Central District of California is proper under 12 U.S.C. § 5564(f).

4. Defaulting Defendant was duly served with the Complaint and the summons issued to her.

5. Defaulting Defendant has failed to answer or otherwise defend this action.

6. The Clerk of Court properly entered default against Defaulting Defendant.

7. Defaulting Defendant is not a minor, an incompetent person, or current member of the military service.

8. Defaulting Defendant was served with written notice of the Application via email on December 7, 2020, at least seven days before any hearing on the Application. The written notice included the amount of the money judgment requested, comprised of restitution and civil money penalties, in the Bureau's Application.

9. The Bureau's Complaint states a claim upon which relief may be granted.

10. The allegations in the Complaint, except with respect to damages, are taken as true because of Defaulting Defendant's default.

11. Judgment is entered on behalf of the Bureau and against Defaulting Defendant on Count I of the Complaint.

12. This Court is empowered to issue injunctive relief, monetary relief, and civil money penalties pursuant to 12 U.S.C. § 5565.

13. The Bureau is entitled to an Order imposing a permanent injunction against Defaulting Defendant and requiring Defaulting Defendant to pay restitution in the amount of $4,992,606, and to pay civil money penalties in the amount of $5,000,000.

14. This action and the relief awarded in this Order are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

15. Entry of this Order is in the public interest.

**Defaulting Defendant Violated the TSR By Requesting and Receiving Advance Fees For a Telemarketed Debt-Relief Service (Count I)**

16. Defaulting Defendant, having entered into engagement agreements with consumers in connection with telemarketing to provide a debt-relief service purported to reduce or eliminate those consumers' private student-loan debts primarily through negotiation, charged those consumers fees on a monthly basis starting at or just after enrollment, and before their debts were reduced or eliminated.

17. Defaulting Defendant, as a seller under the TSR, unlawfully requested and received payment of fees for debt-relief services before the terms of at least one of the consumer's debts had been negotiated, settled, reduced, or otherwise altered pursuant to an agreement executed by the consumer; and the consumer had made at least one payment pursuant to that agreement, in violation of the TSR. 16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

## Basis for Equitable and Monetary Relief

18. The Bureau is proceeding on behalf of thousands of financially distressed individuals unlawfully charged millions of dollars for debt-relief services. *Consumer Fin. Prot. Bureau v. Siringoringo*, No. SACV1401155JVSAJWX, 2016 WL 102435, at *6 (C.D. Cal. Jan. 7, 2016). Considering the balance of hardships and the public interest, the public interest is served by an injunction preventing Defaulting Defendant from engaging in behavior related to her previous illegal conduct. *FTC v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999). Defaulting Defendant was involved in an elaborate, illegal scheme from its inception, in which she participated for three years, and therefore broader "fencing-in" relief provisions help to "prevent similar and related violations from occurring in the future." *World Accounts, Inc. v. FTC*, 594 F.2d 212, 215 (9th Cir. 1979). Accordingly, the permanent injunction ordered in Sections I and II below constitutes "appropriate … equitable relief." 12 U.S.C. §§ 5564(a), 5565(a).

19. Legal restitution is "measured by the loss to consumers." *FTC v. Inc21.com Corp.*, 475 F. App'x 106, 108 (9th Cir. 2012); *see also Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016) (the appropriate measure for restitution is the "full amount lost by consumers rather than limiting damages to a defendant's profits.") (quoting *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)).

20. The Bureau has established, through competent evidence, that Defaulting Defendant received $4,992,606 in unlawful advance fees, net of refunds, from 1,024 consumers, providing a basis for the monetary judgment amount ordered in Section III.

21. A penalty amount of $5,000,000 against the Defaulting Defendant is appropriate. Defaulting Defendant acted knowingly, or at least recklessly, and therefore, she could be subject to much higher penalties, but in light of the applicable mitigating factors, the lower penalty as ordered in Section IV is warranted. 12 U.S.C. §§ 5565(c)(2)(B), (C), (c)(3).

## DEFINITIONS

22. The following definitions apply to this Order:

   A. "**Affected Consumer**" means a consumer who paid fees pursuant to an Engagement Agreement.

   B. "**Assisting Others**" includes, but is not limited to:
      i. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;
      ii. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;
      iii. consulting in any form whatsoever;
      iv. providing names of, or contributing to the generation of, potential customers;
      v. participating in or providing services related to the offering, sale, or servicing of a product, or the collection of payments for a product;

      vi. acting or serving as an owner, officer, director, manager, principal, partner, or limited partner of any entity; and

      vii. investing or loaning money.

C. "**Debt-Relief Service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including, but not limited to a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

D. "**Defaulting Defendant**" means Amanda Johanson and by any other name by which she might be known.

E. "**Effective Date**" means the date on which this Order is entered by the Court.

F. "**Engagement Agreement**" means an agreement with Defaulting Defendant to provide a Debt-Relief Service relating to private student-loan debt, the receivables from which were assigned to Defendant GST Factoring, Inc. through a factoring agreement.

G. "**Person**" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

H. "**Telemarketing**" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate phone call.

## I.

## PERMANENT BAN ON DEBT-RELIEF SERVICES

**IT IS ORDERED** that:

23. Defaulting Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from:

    A. Advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service;

    B. Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; or

    C. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person that is engaged in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

## II.
## PROHIBITION ON COLLECTING ACCOUNTS AND USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that:

24. As of the Effective Date, Defaulting Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from charging fees to Affected Consumers or collecting, attempting to collect, or selling, assigning, or otherwise transferring any right to collect payment from any Affected Consumer.

25. Defaulting Defendant, whether acting directly or indirectly, may not disclose, use, or benefit from, consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that Defaulting Defendant obtained prior to the Effective Date in connection with the advertising, marketing, promotion, offering for sale, sale, or providing of any Debt-Relief Service. However, consumer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## III.
## ORDER TO PAY REDRESS

**IT IS FURTHER ORDERED** that:

26. A judgment for monetary relief is entered in favor of the Bureau and against Defaulting Defendant in the amount of $4,992,606, for the purpose of providing redress to Affected Consumers.

27. Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

28. If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, funds will not revert to Defaulting Defendant. Defaulting Defendant will have no right to challenge the Bureau's choice of remedies under this Section and will have no right to contest any actions that the Bureau or its representatives may take under this paragraph.

29. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## IV.
## ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED** that:

30. Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and taking into account the factors in 12 U.S.C. § 5565(c)(3), a judgment awarding a civil money penalty in the amount of $5,000,000 is entered against Defaulting Defendant with post-judgment interest at the

legal rate. This monetary judgment is enforceable against any asset owned by, on behalf of, for the benefit of, or in trust by or for Defaulting Defendant.

31.   The civil money penalties paid under this Order shall be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, <u>12 U.S.C. § 5497(d)</u>.

## V.
## ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

32.   Defaulting Defendant must relinquish all dominion, control, and title to any funds paid pursuant to this Order to the fullest extent permitted by law and no part of the funds may be returned to Defaulting Defendant.

33.   Defaulting Defendant shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including any insurance policy, with regard to any civil money penalty paid pursuant to this Order.

34.   Defaulting Defendant shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any civil money penalty that Defaulting Defendant pays pursuant to this Order.

## VI.
## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that:

35.   The Court will retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order.

## VII.
## SERVICE

**IT IS FURTHER ORDERED** that:

36. This Order may be served upon Defaulting Defendant by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

**SO ORDERED** this 15th day of Dec , 2020.

*David O. Carter*

Honorable David O. Carter
United States District Judge