JEFFREY BLUMBERG
E-mail: jeffrey.blumberg@cfpb.gov
Phone: (202) 435-9687
REBECCA COLEMAN
E-mail: rebecca.coleman@cfpb.gov
Phone: (202) 435-7541
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE HARTMANN, CA Bar # 264787 - Local Counsel
301 Howard St., Suite 1200
San Francisco, CA 94105
Phone: (415) 844-9787
Email: leanne.hartmann@cfpb.gov
Attorneys for Plaintiff
Bureau of Consumer Financial Protection

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>Plaintiff,<br><br>v.<br><br>GST Factoring, Inc.; Champion Marketing Solutions, LLC; Rick Graff; Gregory Trimarche; Scott Freda; Amanda Johanson; David Mize; Jacob Slaughter; and Daniel Ruggiero;<br><br>Defendants. | Case No. 8:20-cv-01239 -DOC<br><br>**STIPULATED FINAL JUDGMENT AND ORDER AS TO DEFENDANTS CHAMPION MARKETING SOLUTIONS, LLC AND SCOTT FREDA [69]** |

The Bureau of Consumer Financial Protection (the Bureau), commenced this civil action on July 13, 2020 to obtain injunctive and monetary relief and civil penalties. The

Complaint alleges violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 et seq., and its implementing rule, the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310, in connection with the sale of a Telemarketed Debt-Relief Service.

The Bureau and Defendants Champion Marketing Solutions, LLC and Scott Freda (Defendants) agree to entry of this Stipulated Final Judgment and Order (Order), to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

**I.   FINDINGS**

1. This Court has jurisdiction over the parties and the subject matter of this action and venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) and (c), and 12 U.S.C. § 5564(f).

2. Defendants neither admit nor deny the allegations in the Complaint, except as specifically stated herein. Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

3. The Complaint alleges claims upon which relief may be granted.

4. The relief provided in this Order is appropriate and available pursuant to sections 1054 and 1055 of the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5564 and 5565.

5. Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party agrees to bear its own costs and expenses, including, without limitation, attorney's fees.

6. Entry of this Order is in the public interest.

**II.   DEFINITIONS**

7. The following definitions apply to this Order:

    a. "Affected Consumer" means a consumer who paid fees pursuant to an Engagement Agreement.

    b. "Assisting Others" includes, but is not limited to:

        i. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;

        ii. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

        iii. consulting in any form whatsoever;

        iv. providing names of, or contributing to the generation of, potential customers;

        v. participating in or providing services related to the offering, sale, or servicing of a product, or the collection of payments for a product;

        vi. acting or serving as an owner, officer, director, manager, principal, partner, or limited partner of any entity; and

        vii. investing or loaning money.

    c. "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in Section 1002(5) of the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to:

      i. Extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);

      ii. Providing financial advisory services to consumers on individual financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure;

      iii. Collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a Consumer Financial Product or Service; or

      iv. Collecting debt related to any Consumer Financial Product or Service.

d. "Corporate Defendant" means Champion Marketing Solutions, LLC, and its successors and assigns.

e. "Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including but not limited to a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

f. "Defendants" means the Corporate Defendant and the Individual Defendant, individually, collectively, or in any combination.

g. "Effective Date" means the date on which this Order is entered by the Court.

4

h. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

i. "Engagement Agreement" means an agreement to provide a Debt-Relief Service relating to private student-loan debt, the receivables from which were assigned to GST Factoring, Inc. through a factoring agreement.

j. "Individual Defendant" means Scott Freda and by any other name by which he might be known.

k. "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

l. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

m. "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate phone call.

**CONDUCT PROVISIONS**

**III. BAN ON DEBT-RELIEF SERVICES**

**IT IS ORDERED** that:

8. Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

    a. Advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service;

    b. Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; or

  c. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person that is engaged in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

Nothing in this Order shall be read as an exception to this Paragraph.

### IV. BAN ON TELEMARKETING

**IT IS FURTHER ORDERED** that:

9. Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

  a. Telemarketing any Consumer Financial Product or Service;

  b. Assisting Others in Telemarketing any Consumer Financial Product or Service; or

  c. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person that is engaged in Telemarketing any Consumer Financial Product or Service.

Nothing in this Order shall be read as an exception to this Paragraph.

### V. INJUNCTION CONCERNING COLLECTING PAYMENTS FROM AFFECTED CONSUMERS

**IT IS FURTHER ORDERED** that:

10. As of the Effective Date, Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from charging fees to Affected Consumers or collecting, attempting to collect, or selling, assigning, or otherwise transferring any right to collect payment from any Affected Consumer.

## VI. PROHIBITED USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that:

11. Defendants, and their officers, agents, servants, employees, and attorneys who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that Defendants obtained prior to the Effective Date in connection with the advertising, marketing, promotion, offering for sale, sale, or providing of any Debt-Relief Service. However, consumer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## MONETARY PROVISIONS

## VII. ORDER TO PAY REDRESS

**IT IS FURTHER ORDERED** that:

12. A judgment for monetary relief is entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of $11,618,522 for the purpose of providing redress to Affected Consumers; however, full payment of this judgment will be suspended upon satisfaction of the obligations in Paragraphs 13 of this Section and Paragraphs 27 through 31 and 33 of Section X and subject to Section VIII of this Order.

13. Within 10 days of the Effective Date, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $5,000 in partial satisfaction of the judgment as ordered in Paragraph 12 of this Section.

14. With regard to any redress that Defendants pay pursuant to Paragraph 13, if Defendants receive, directly or indirectly, any reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, or if Defendants secure a tax deduction or tax credit with regard to any federal, state, or local

tax, Defendants must: (a) immediately notify the Enforcement Director in writing, and (b) within 10 days of receiving the funds or monetary benefit, Defendants must transfer to the Bureau the full amount of such funds or monetary benefit (Additional Payment) to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions. After the Bureau receives the Additional Payment, the amount of the suspended judgment referenced in Paragraph 12 will be reduced by the amount of the Additional Payment and the Additional Payment will be applied toward satisfaction of the monetary judgment entered in Paragraph 12.

15. Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

16. If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau will deposit any remaining funds in the United States Treasury as disgorgement. Defendants will have no right to challenge the Bureau's choice of remedies under this Section, and will have no right to contest any actions that the Bureau or its representatives may take under this paragraph.

17. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

**VIII. EFFECT OF MISREPRESENTATION OR OMISSION REGARDING FINANCIAL CONDITION**

**IT IS FURTHER ORDERED** that:

18. The suspension of the monetary judgment entered in Section VII of this Order is expressly premised on the truthfulness, accuracy, and completeness of

Defendants' financial statements and supporting documents submitted to the Bureau, which Defendants assert are truthful, accurate, and complete, and which include:

    a. Financial Statement of Individual Defendant, including the attachments, signed on December 3, 2020 and submitted to the Bureau on or about December 3, 2020.

    b. Financial Statement of Corporate Defendant, including the attachments, signed on December 3, 2020 and submitted to the Bureau on or about December 3, 2020.

    c. Supplemental financial information regarding Individual Defendant provided to the Bureau on June 22, 2020, November 6, 2020, November 12, 2020, and November 19, 2020.

    d. 2018 and 2019 federal tax returns for Individual Defendant, submitted to the Bureau on or about November 6, 2020.

    e. 2017, 2018, and 2019 federal tax returns for Corporate Defendant, submitted to the Bureau on or about November 12, 2020.

19. If upon motion by the Bureau, the Court determines that Defendants have failed to disclose any material asset or that any of their financial statements contain any material misrepresentation or omission, including materially misstating the value of any asset, the Court shall terminate the suspension of the monetary judgment entered in Section VII and without further adjudication, shall reinstate the judgment entered in Section VII of this Order and the full judgment of $11,618,522 shall be immediately due and payable, less any amounts paid to the Bureau under Section VII of this Order.

20. If the Court terminates the suspension of the monetary judgment under this Section, the Bureau will be entitled to interest on the judgment, computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

21. Provided, however, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, provided further, that proceedings instituted under this provision would be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Order.

### IX. ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED** that:

22. Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), each Defendant must pay a civil money penalty of $1 to the Bureau. This amount is based on Defendants' limited ability to pay as attested to in their financial statements listed in Section VIII above.

23. Within 10 days of the Effective Date, each Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

24. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

25. Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

    a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

26. Individual Defendant agrees that the civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and thus, as to Individual Defendant, it is not subject to discharge under the Bankruptcy Code, 11 U.S.C. § 523(a)(7).

## X. ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

27. In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding payments not paid from the date of default to the date of payment, and will immediately become due and payable.

28. Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

29. The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a nondischargeability complaint in any bankruptcy case.

30. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against each Defendant, even in such Defendant's capacity as debtor-in-possession.

31. Under 31 U.S.C. § 7701, Defendants, unless they have already done so, must furnish to the Bureau their taxpayer identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

32. Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the

amount of redress, if any, that Defendants paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendants based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendants must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the United States Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

33. Upon written request, any consumer reporting agency must furnish consumer reports to the Bureau concerning Individual Defendant under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)(1), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

<b>COMPLIANCE PROVISIONS</b>

**XI. REPORTING REQUIREMENTS**

**IT IS FURTHER ORDERED** that:

34. Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' name or

address. Defendants must provide this notice, if practicable, at least 30 days before the development, but in any case, no later than 14 days after the development.

35. Within 7 days of the Effective Date, each Defendant must:

  a. Designate at least one telephone number and email, physical and postal address as points of contact, which the Bureau may use to communicate with such Defendant;
  b. Identify all businesses for which such Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email and Internet addresses;
  c. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;
  d. Identify Individual Defendant's telephone numbers and email, Internet, physical and postal addresses, including all residences; and
  e. Describe in detail Individual Defendant's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including his title, role, responsibilities, participation, authority, control, and ownership.

36. Defendants must report any change in the information required to be submitted under Paragraph 35 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

37. Within 90 days of the Effective Date, and again one year after the Effective Date, each Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn under penalty of perjury (Compliance Report), which, at a minimum:

  a. Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which such Defendant has complied with each such paragraph and subparagraph of this Order; and

      b. Attaches a copy of each Order Acknowledgment obtained under Section XII, unless previously submitted to the Bureau.

After the one-year period, Defendants must submit to the Enforcement Director additional Compliance Reports within 14 days of receiving a written request from the Bureau.

## XII. ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

**IT IS FURTHER ORDERED** that:

38. Within 7 days of the Effective Date, each Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

39. Within 30 days of the Effective Date, Corporate Defendant, and Individual Defendant, for any business for which he is majority owner or which he directly or indirectly controls, must deliver a copy of this Order to each of its board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

40. For 5 years from the Effective Date, Corporate Defendant, and Individual Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section XI, any future board members and executive officers, before they assume their responsibilities.

41. Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with all the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq*., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

42. Within 90 days of the Effective Date, Defendants must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that

date under Paragraphs 39 and 40 and a copy of all signed and dated statements acknowledgments of receipt of this Order under Paragraph 41.

### XIII. RECORDKEEPING

**IT IS FURTHER ORDERED** that:

43. Defendants, including for any business for which Individual Defendant, individually or collectively with Corporate Defendant, is a majority owner or which he directly or indirectly controls, must create, for at least 10 years from the Effective Date, all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau. Defendants must retain these documents for at least 10 years after creation and make them available to the Bureau upon the Bureau's request.

44. Corporate Defendant must maintain, for at least 5 years from the Effective Date or 5 years after creation, whichever is longer:

   a. Financial records, including, but not limited to, tax returns and accounting records showing gross and net revenues, all costs incurred in generating revenues, and the resulting net profit or loss;

   b. Any and all documentation required to complete the Bureau's individual and corporate financial disclosure forms;

   c. For any Affected Consumer, records showing the person's name, email and postal address, telephone number, dates and dollar amounts of payments made, and the quantity and description of goods and services purchased; and

   d. All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any response to those complaints or requests.

45. Individual Defendant must maintain, for at least 5 years from the Effective Date or 5 years after creation, whichever is longer, financial records, including, but not

limited to, individual and corporate tax returns, credit reports, any and all documentation required to complete the Bureau's individual and corporate financial disclosure forms, and accounting records showing gross and net revenues, all costs incurred in generating revenues, and the resulting net profit or loss.

46. Defendants must make the documents identified in Paragraphs 44 and 45 available to the Bureau upon the Bureau's request.

### XIV. NOTICES

**IT IS FURTHER ORDERED** that:

47. Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. GST Factoring, Inc., et.al.*, Case No. 8:20-cv-01239" and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Bureau of Consumer Financial Protection
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington, DC 20552

48. The Enforcement Director may, in his or her discretion, modify any non-material requirements of this Order (e.g., reasonable extensions of time and changes to reporting requirements) if he or she determines good cause justifies the modification. Any such modification by the Enforcement Director must be in writing.

### XV. COOPERATION WITH THE BUREAU

**IT IS FURTHER ORDERED** that:

49. Defendants must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

50. Defendants must cooperate fully with the Bureau in this matter and in any investigation or litigation related to or associated with the conduct described in the Complaint, including, but not limited to, providing information, documents, and testimony. Defendants must provide truthful and complete information, evidence, and testimony. Individual Defendant must appear and Corporate Defendant must cause its officers, employees or agents to appear, for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XVI. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, to monitor Defendants' compliance with this Order, including the financial representations upon which the monetary judgment was partially suspended:

51. Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

52. For purposes of this Section, the Bureau may communicate directly with Defendants, unless Defendants retain counsel related to these communications.

53. Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

54. Nothing in this Order will limit the Bureau's lawful use of compulsory process, including pursuant to 12 C.F.R. § 1080.6.

## XVII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that:

55. The Court will retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order.

## XVIII. SERVICE

**IT IS FURTHER ORDERED** that:

56. This Order may be served upon Defendants by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

**IT IS SO ORDERED.**

Dated: this 15th day of December, 2020.

*David O. Carter*

United States District Judge